**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Robert T. Lincoln,

Plaintiff,

v.

Sears, Roebuck and Co. d/b/a "Sears Home Improvement Products"; and Sears Home Improvement Products, Inc.,

Defendants.

Civil No. 02-840 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

James G. Ryan, Esq., Ryan Law Office, 80 8th Street South, Suite 4421, Minneapolis, MN 55402, counsel for Plaintiff.

Heather C. Sherman, Esq., and Kathryn A. Mrkonich, Esq., Littler Mendelson, 33 6th Street South, Suite 3110, Minneapolis, Minnesota 55402-3720, counsel for Defendants.

---

## Introduction

The above-entitled matter is before the undersigned United States District Judge pursuant to Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and pursuant to Defendants' Motion to Dismiss for failure to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In its Amended Complaint, Plaintiff alleges violations of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Furthermore, Plaintiff alleges state law claims including negligent infliction of emotional distress, intentional infliction of emotional distress, fraud and/or intentional misrepresentation, negligent misrepresentation, promissory estoppel, and violations of Minn. Stat. §§ 181.64 and 181.65. For the reasons set forth below, Defendants' motion to

SEP 17 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

dismiss Plaintiff's claim under Minn. Stat. §§ 181.64 and 181.65 is granted. Defendants' Motion to Dismiss the remaining claims is denied.

**Background**

Sears Roebuck and Co. ("Sears") is the parent company of Sears Home Improvement Products ("SHIP"), formerly American Home Improvement Products ("AHIP"). In July 1999, Plaintiff Robert T. Lincoln ("Lincoln") was promoted and transferred to SHIP's office in Brooklyn Park, Minnesota, from the SHIP office where he previously worked in St. Louis, Missouri. Lincoln alleges that at the time of his transfer, SHIP management assured him that if he accepted the promotion and transfer, he still would be allowed to take leave to attend to his parents in St. Louis. Lincoln's claims arise from a number of alleged failures by SHIP to grant Lincoln leave to assist his ailing parents after he had transferred to Minnesota.

Lincoln first requested leave in March 2000 when his father underwent quadruple bypass surgery and had one of his lungs removed at a hospital in St. Louis. Tim Graham, Lincoln's immediate supervisor in Chicago, refused Lincoln's request. Lincoln again requested leave when his father went into a coma after the bypass surgery, and was not expected to live. After initially refusing Lincoln's request, Graham allowed Lincoln five days of leave. Later that spring, Lincoln requested leave when his father regained consciousness. Graham denied his request.

Lincoln's father died on May 30, 2000. Lincoln initially was given three days off to attend his father's funeral. When Lincoln requested another week of leave, it was granted on the condition that Lincoln continue to manage the Brooklyn Park office while he was gone. When Lincoln returned to work on June 12, 2000, he was disciplined for having been absent, even though Lincoln contends that he completed all of the work expected of him during his absence.

Later in June 2000, Lincoln contacted SHIP's Human Resources Department to see if he could take leave to return to St. Louis to assist his mother, who was suffering from depression. It was only at that time that the Human Resources Department informed Lincoln that he was eligible for FMLA leave. Lincoln notified Graham that he wanted to take a two-week leave pursuant to his FMLA rights, commencing on June 30, 2000. Lincoln alleges that Graham became angry, but consented to the leave.

The day before he was to begin his leave, Lincoln still had not received any paperwork regarding the leave. Lincoln contacted SHIP's Human Resources Department and they faxed leave paperwork to him at the Brooklyn Park office. Lincoln alleges, and Defendants do not dispute, that this paperwork had "American Home Improvement Products" or "AHIP" (the predecessor to SHIP) printed at the top of the pages.[1] Lincoln contacted Human Resources to determine whether he should still sign the forms despite the alleged incorrect headings. Lincoln contends that he was told to wait for new claim forms, such forms which were never received.

At some point, SHIP also sent Lincoln a letter detailing his leave eligibility.[2] The letter, dated June 29, 2000, stated in pertinent part as follows:

---

[1] Defendants have submitted to this Court a copy of the forms that were sent to Lincoln on June 29, 2000, and the tops of the pages are cut off. Thus, it is unclear whether these forms referred to AHIP, SHIP, or Sears.

[2] It is unclear whether this letter was faxed to Lincoln along with the claim forms or separately. The letter was addressed to Lincoln in Missouri. Like the other copies of correspondence between SHIP and Lincoln that were submitted by Defendants, the tops of the pages are cut off.

> Dear Mr. Lincoln:
>
> It is my understanding that your last day of work was June 29, 2000.
>
> As you are undoubtedly aware, the nature of your illness and the fact that you have been with the Company for more than one (1) year entitles you to an unpaid leave of absence under the Family Medical Leave Act (FMLA) of 1993 for a period not to exceed twelve (12) weeks. Accordingly we are placing you on an FMLA leave effective June 30, 2000 and continuing for such time as may be necessary up to and including twelve (12) weeks from the date of your disability.
>
> As I discussed earlier, FMLA leave is unpaid. However, you have the option of utilizing your remaining vacation and personal days. Please advise me at your earliest convenience if you desire to use your remaining vacation and personal days and I will make arrangements with payroll to see that you are paid for these days. Obviously you are not required to use your vacation or sick time to provide offsetting compensation but the option is available should you elect to do so. In either case it will not affect the duration of your twelve (12) week FMLA leave.
>
> I have also enclosed with this correspondence documentation which you will need to submit to your attending physician showing the status of your recovery and the estimated period of time which you may be disabled. I would recommend that you keep in touch with us during the period of your disability so that we may be appraised of an anticipated return to work date.
>
> Under the terms of an FMLA leave you are entitled to resume your former position as a Project Coordinator in Brooklyn Park at your former rate of compensation providing you return to work within the twelve (12) week time frame of your FMLA leave. Assuming that you are disabled for the entire period of time we would anticipate that you would need to return to your former position no later than September 22, 2000. In the event that you do not do so, if you are out past September 22, 2000, your return to work would be predicated upon whatever positions may be available at the time and the prevailing compensation package for such position.
>
> Please arrange to submit the enclosed documentation to your attending physician with instructions that it should be returned to my attention at our corporate offices in Monroeville (self-addressed stamped envelope included).

The letter was signed by Tina Lowman, Benefits Assistant.

Lincoln commenced his leave on June 30, 2000. Lincoln alleges that he inquired with the Human Resources Department as to the status of the paperwork several times during the course

of his leave, but the Human Resources Department never responded. Lincoln further alleges that when he later asked Graham how to handle the paperwork, Graham instructed Lincoln not to be concerned about it.

Lincoln was scheduled to return to work on July 17, 2000. Lincoln alleges that he contacted Graham to coordinate his return near the end of the two-week leave, and, at that time, Graham insisted that Lincoln delay his return until the beginning of August. On July 31, 2000, Lincoln received a letter dated July 26, 2000, from the Regional Director of Human Resources Charles W. Klinzing, terminating Lincoln's employment on the grounds that Lincoln had abandoned his job. The letter stated, in pertinent part, as follows:

> Pursuant to your request of June 27, 2000 we forwarded to your attention via facsimile to the Brooklyn Park, MN office the necessary paperwork for you to complete in order to activate your FMLA leave. These documents were received by you on or about June 29, 2000.
>
> In order for the FMLA leave to be triggered you are required to return such paperwork within 15 days of receipt thereof. Excluding the 4th of July, this paperwork was due back to the company by July 21, 2000.
>
> In as much as neither the Human Resources Department, the Brooklyn Park office, nor your immediate supervisor, Mr. Tim Graham has heard anything from you in the intervening three and one half weeks, we are left with no alternative but to conclude that you have elected to terminate your employment. Accordingly, the company considers your employment to be terminated voluntarily as of June 29, 2000.

Based upon these events, Lincoln alleges that he was unfairly denied leave and wrongfully terminated in violation of the FMLA. Further, Lincoln alleges negligent and intentional infliction of emotional distress, fraud and/or intentional misrepresentation, negligent misrepresentation, promissory estoppel, and violations of Minn. Stat. §§ 181.64 and 181.65. Defendant moved to dismiss Lincoln's claims pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), alleging that this Court lacks jurisdiction because Defendant SHIP is not subject to the FMLA and that Lincoln's state law claims are preempted by the FMLA.

**Subject Matter Jurisdiction Under the FMLA**

**1. Standard of Review**

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. U.S.*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. *See Osborn*, 918 F.2d at 729 n.6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. *See Titus*, 4 F.3d at 593 (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982)); *Osborn*, 918 F.2d at 729 n.6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). *See Titus*, 4 F.3d 590 at 593; *Osborn*, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn*, 918 F.2d at 730.

Defendants are making a factual challenge to Lincoln's Complaint. Defendants argue that jurisdiction is inappropriate and the FMLA does not apply because SHIP does not employ at least 50 employees within a 75-mile radius of the Brooklyn Park facility at which Lincoln was

employed. Defendants further contend that SHIP's relationship with Sears is not enough to qualify SHIP as an integrated or joint employer and thus to allow Lincoln FMLA protection. Lincoln, in response, contends that the FMLA is indeed applicable to Defendants, either by virtue of the number of employees that SHIP employs at the Brooklyn Park facility, or by virtue of SHIP's relationship with Sears. Furthermore, Lincoln argues that even if SHIP employees are not covered by the statutory requirements of the FMLA, Lincoln's rights for covered leave under the FMLA should be protected by an estoppel theory.

**2. Discussion**

The Court is unwilling to grant Defendants' Motion to Dismiss for lack of subject matter jurisdiction. Without allowing Lincoln further discovery on the matter, the Court is unable to determine why SHIP affirmatively stated that it was subject to the FMLA in its June 29, 2000, letter detailing Lincoln's "FMLA" leave. Because the Court finds that additional discovery is required in order to determine whether SHIP is indeed subject to the FMLA, Defendants' motion to dismiss is denied.

**Lincoln's State Law Claims**

**1. Standard of Review**

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the

Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

**2. Lincoln's Claim under Minnesota Statutes §§ 181.64 and 181.65**

Lincoln contends that Defendants violated Minn. Stat. §§ 181.64 and 181.65 because Defendants represented to Lincoln in July 1999 that if he accepted the promotion and transfer to Minnesota from St. Louis, Lincoln would be allowed leave to care for his parents in St. Louis. Minnesota Statutes § 181.64 provides as follows:

> It shall be unlawful for any person, partnership, company, corporation, association, or organization of any kind, doing business in this state, directly or through any agent or attorney, to induce, influence, persuade, or engage any person to change from one place to another in this state, or to change from any place in any state, territory, or country to any place in this state, to work in any branch of labor through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, *concerning the kind or character of such work*, the compensation therefor . . . . Any such unlawful acts shall be deemed a false advertisement or misrepresentation for the purposes of this section and section 181.65

(Emphasis added.) Section 181.65 allows for a private right of action for a violation of section 181.64.

The Court finds that SHIP's alleged promise to allow Lincoln leave in the event of his parents' illness does not fall within the purview of sections 181.64 and 181.65. Even if SHIP misrepresented its leave policies, such statements did not pertain to the "kind" or "character" of Lincoln's employment. Nor did such alleged statements concern Lincoln's compensation, the only other provision of the statute that arguably could relate to Lincoln's claims. Rather, Defendants' alleged representations involved the nature of Lincoln's benefits package. Such misrepresentations do not constitute actionable misconduct under the statute, and, therefore, Lincoln's claim alleging a violation of sections 181.64 and 181.65 is dismissed.

**2. Remaining State Law Claims**

Defendants argue that Lincoln's state law claims must be dismissed under Rule 12(b)(6), contending that because Congress provided for an exclusive remedy in the FMLA, the FMLA preempts Lincoln's state law claims that rest upon FMLA violations. Defendants have not pleaded any alternative theories for dismissal of Lincoln's state common law claims, aside from preemption. Lincoln asserts that the FMLA does not preempt related state law claims, but that even if it did preempt such claims, Lincoln's state law claims survive standing alone.

The Court declines to rule that Lincoln's state law claims are preempted as a matter of law. It is not clear to the Court that Lincoln's state law claims are dependent upon the alleged FMLA violation. Whether or not the FMLA applies, it appears to the Court that there may be a set of facts that would allow Lincoln relief under his various state common law claims. Furthermore, absent further discovery, the Court cannot determine whether the FMLA applies, and thus it is inappropriate for the Court to determine the preemptive effect of the FMLA at this time.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss Plaintiff's claim under Minn. Stat. §§ 181.64 and 181.65 (Count Four) is **GRANTED.**

2. Defendants' Motion to Dismiss Counts One, Two, Three, Five, Six, and Seven of Plaintiff's Amended Complaint is **DENIED.**

Dated: September 17, 2002

DONOVAN W. FRANK
Judge of United States District Court